# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00478-CV

## In re Volkswagen Clean Diesel Litigation:
## Texas Clean Air Act Enforcement Cases

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## O P I N I O N

The State seeks mandamus relief from the MDL pre-trial court's refusal to abate eighteen later-filed cases involving the State's and various counties' enforcement of the Texas Clean Air Act against Volkswagen.[1]  The principal issue in this mandamus proceeding—one of first impression—is whether, under this unique factual and procedural posture, the common-law doctrine of dominant jurisdiction requires that the counties' later-filed enforcement suits, pending in the MDL, be abated until resolution of the State's enforcement suit.  Because we conclude that they must be abated, as explained below, we will conditionally grant the State's petition for writ of mandamus.

Invoking the doctrine of dominant jurisdiction, the State asserts that it is entitled to mandamus relief ordering the pretrial court to abate the later-filing counties' suits because the State's

---

[1] The State included this request for mandamus relief in *In re Volkswagen Clean Diesel Litigation: Texas Clean Air Act Enforcement Cases*, our cause number 03-16-000718-CV.  On our own motion, we severed the State's petition for writ of mandamus into a separate cause, No. 03-17-000478-CV.  The facts and statutory scheme relevant to this original proceeding are the same as those set forth in our opinion issued today in *In re Volkswagen Clean Diesel Litig.: Tex. Clean Air Act Enf't Cases*, No. 03-16-000718-CV (Tex. App.—Austin July 28, 2017, no pet. h.).

enforcement suit against Volkswagen was filed before the later-filing counties' enforcement suits against Volkswagen. We agree. "In instances where inherently interrelated suits are pending in two counties, and venue is proper in either county, the court in which suit was first filed acquires dominant jurisdiction. In these circumstances, the general rule is that the court in the second action *must* abate the suit."[2] If the trial court in the second action—here, the MDL pretrial court acting, as it were, on behalf of the courts in which the later-filing counties brought suit—abuses its discretion by not abating the action, no additional showing is required for mandamus relief.[3]

There is no dispute that the State's TCAA-enforcement action against Volkswagen was filed first,[4] that venue is proper in each of the counties where the respective cases were filed,[5] or that the lawsuits are inherently interrelated.[6] Nor do the later-filing counties suggest that any exceptions to dominant jurisdiction apply here.[7] Instead, the later-filing counties argue that the pretrial court did not abuse its discretion by denying abatement here because the statutory MDL

---

[2] *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 321 (Tex. 2016) (citing *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding); *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988)).

[3] *Id.* (citing *J.B. Hunt*, 492 S.W.3d at 299–300).

[4] *See id.* at 323 (determining chronological order of suits).

[5] *See* Tex. Water Code § 7.105(c) ("The suit may be brought in Travis County, in the county in which the defendant resides, or in the county in which the violation or threat of violation occurs."); *Red Dot*, 504 S.W.3d at 322 (determining whether venue was proper in counties where inherently interrelated suits were filed).

[6] *See Red Dot*, 504 S.W.3d at 322 (lawsuits must be "inherently interrelated"); *J.B. Hunt*, 492 S.W.3d at 294; *Wyatt*, 760 S.W.2d at 248.

[7] *See J.B. Hunt*, 495 S.W.3d at 294 (estoppel and lack of intent to prosecute); *Perry v. Del Rio*, 66 S.W.3d 239, 252–53 (Tex. 2001) (lack of necessary parties).

scheme has somehow displaced the common-law doctrine of dominant jurisdiction. While this argument may be up for debate in a situation where the dominant-jurisdiction issue arises in connection with more typical MDL cases—i.e., cases where claimants seek recovery of their own separate and individual injuries—in the unique circumstance of the statutory enforcement claims asserted here, we hold that the doctrine of dominant jurisdiction controls.

"'[S]tatutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended.'"[8] In the MDL statute, the Legislature created a system where civil cases that "involv[e] one or more common questions of fact" can be transferred to a pretrial court for "consolidated or coordinated pretrial proceedings" if the transfer will "be for the convenience of the parties and witnesses" and "promote the just and efficient conduct of the actions."[9] The MDL process is a statutory tool of economy intended to coordinate or consolidate the pretrial proceedings in pending cases that share underlying questions of fact, but where the claimants each seek recovery for their own injuries and where, ultimately, the individual cases will be remanded for separate trials. The doctrine of dominant jurisdiction, by contrast, applies where cases are inherently interrelated because they "involv[e] the *same parties and the same controversy*," and requires that the later-filed cases "be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement."[10] "The

---

[8] *Dugger v. Arredondo*, 408 S.W.3d 825, 828 (Tex. 2013) (quoting *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007)).

[9] Tex. Gov't Code § 74.162.

[10] *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (emphasis added); *see Warren v. Weiner*, 462 S.W.3d 140, 144–45 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Curtis* for same proposition); *Lopez v. Texas Workers' Comp. Ins. Fund*, 11 S.W.3d 490, 493 (Tex.

3

jurisprudential reason for the [dominant-jurisdiction] rule is that once a matter is before a court of competent jurisdiction, 'its action must necessarily be exclusive' because it is 'impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties.'"[11] Given the unique circumstances we have before us—i.e., where the State's and respective counties' cases all seek to enforce the same environmental laws by imposing penalties on the same parties for the same violations—we cannot say that the Legislature intended for the MDL statute to modify or create an exception to the common-law rule of dominant jurisdiction.[12]

The later-filing counties argue that, even if dominant jurisdiction attaches to the State's case, the abatement issue can be revisited if necessary when the civil-penalty actions are remanded for their respective trials and, relatedly, that mandamus review is unwarranted here because neither the State nor the legal system will suffer any harm if the later-filing counties are allowed to participate in the coordinated pretrial proceedings in the MDL court. Because the pretrial court's orders are binding in the trial court after remand, however, this "revisiting" could only happen if the pretrial court decided to rehear an issue it had already decided.[13] But even assuming that this could or would happen, the Texas Supreme Court has declared that once a relator has

App.—Austin 2000, pet. denied) (same); *see also J.B. Hunt*, 492 S.W.3d at 295 n.21 (referencing *Curtis*'s "same parties and same controversy" language in context of explaining that inherently interrelated cases are subject to abatement).

[11] *Perry v. Del Rio*, 66 S.W.3d 239, 252 (quoting *Cleveland*, 285 S.W. at 1071).

[12] *See Dugger*, 408 S.W.3d at 828.

[13] *See* Tex. R. Jud. Admin. 13.8(b) ("Without the written concurrence of the pretrial court, the trial court cannot, over objection, vacate, set aside, or modify pretrial court orders . . . .").

established that the doctrine of dominant jurisdiction applies—i.e., the relator's suit was filed first in an appropriate venue, remains pending, and is inherently interrelated to the later-filed suit[14]—the trial court in the later-filed case *must* abate the later-filed case and abuses its discretion in failing to do so.[15] Further, the supreme court's decision in *J.B. Hunt* suggests that we may not delay here, whether to allow the dominant-jurisdiction issue to "ripen" or because the pretrial court could revisit the issue before remand. In *J.B. Hunt*, the supreme court overturned its prior decision holding that mandamus relief was not available unless the second-filed court "actively interferes with the exercise of jurisdiction" in the other court.[16] Instead, the supreme court held that regardless of whether the second court is actively interfering with the dominant court, "a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a plea in abatement in a dominant-jurisdiction case."[17]

Several of the later-filing counties argue that the doctrine of dominant jurisdiction does not apply to their respective suits because their lawsuits were the first to include certain

---

[14] *See Red Dot*, 504 S.W.3d at 324; *J.B. Hunt*, 492 S.W.3d at 298.

[15] *Red Dot*, 504 S.W.3d at 323 ("In sum, the [first-filed] court acquired dominant jurisdiction, the [second-filed] court should have granted [relator]'s plea in abatement and abused its discretion in failing to do so, and [relator] is entitled to mandamus relief.").

[16] *See J.B. Hunt*, 492 S.W.3d at 298 ("*Abor* held that mandamus relief is unavailable to correct an erroneous denial of a plea in abatement where there is 'no conflict of jurisdiction'—that is, there was no injunction or order in one court 'which actively interferes with the exercise of jurisdiction' in the other court." (quoting *Abor v. Black*, 695 S.W.2d 564 (Tex. 1985)).

[17] *Id.* at 300.

defendants that were not named in the State's enforcement suits[18] and, thus, that their cases should be considered the first-filed cases against the defendants not named in the State's enforcement action. But the supreme court has rejected this argument, explaining that "[i]t is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues.[19] Here, nothing prevents the State from adding additional defendants to its enforcement action.

Finally, we note that our decision here is not an assault on the MDL scheme, but rather is limited to the unique nature and procedural posture of the cases before us. Although fairly characterized as falling within the MDL statute's broad scope of sharing common questions of fact, the cases here are also inherently interrelated, and thus subject to the dominant-jurisdiction doctrine, because the later-filed suits all seek to recover civil penalties from the same TCAA violators for the same TCAA violations as does the State's case.[20] Put another way, these TCAA enforcement actions differ from the typical MDL cases in that each local-government action seeks, by definition, to

---

[18] The counties asserting this argument are Bexar, Brazos, Denton, Jefferson, Lubbock, Nueces, Parker, and Taylor counties. These newly named defendants include Volkswagen Aktiengesellschaft; Volkswagen Group of America Chattanooga Operations, LLC; Audi Aktiengesellschaft; Dr. Ing H.c.F. Porsche Aktiengesellschaft; Porsche Cars of North America, Inc.; Robert Bosch, LLC; and Robert Bosch GmbH.

[19] *Wyatt*, 760 S.W.2d at 247.

[20] *See id.* ("In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." (citing Tex. R. Civ. P. 39, 97(a)). The cases here meet both rules because, as explained, the counties' claims are, with the exception of the geographic restriction, identical to the State's claims and because the TCAA makes TCEQ (i.e., the State) a necessary and indispensable part to all local-government suits. *See* Tex. Water Code § 7.353 ("In a suit brought by a local government under this subchapter, the commission is a necessary and indispensable party.").

punish the very same violations that the State could, using the same penalty and enforcement mechanism set forth in the TCAA and including the State as a necessary party as required by the TCAA.

In sum, the Travis County District Court acquired dominant jurisdiction over TCAA violations in 252 Texas counties, including the county parties here, when the State filed its enforcement action in that court. The courts in which the later-filed cases were filed—and now the MDL pretrial court in their stead—should have granted the State's plea in abatement and abated the later-filed cases until the State's first-filed case is resolved. The MDL pretrial court abused its discretion in failing to do so.[21]

Accordingly, we conditionally grant mandamus relief and direct the pretrial court to grant the State's pleas in abatement as to the later-filing counties. We are confident the pretrial court will promptly comply, and our writ will issue only if it does not.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Bourland

Filed: July 28, 2017

---

[21] *See Red Dot*, 504 S.W.3d at 324.