

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00185-CV

———————————————

COMP-E-WARE TECHNOLOGY ASSOCIATES, INC. D/B/A COMWARE,
Appellant

V.

MUSHKIN, INC., D/B/A ENHANCED NETWORK SYSTEMS, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-310938-19

Before Kerr, Bassel, and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

Appellant Comp-E-Ware Technology Associates, Inc. (doing business as Comware) appeals from the 17th District Court of Tarrant County's denial of its "Motion to Compel Arbitration [of] and Motion to Dismiss or Stay" the claims of Appellee Mushkin, Inc. (doing business as Enhanced Network Systems) (ENS) against Comware. We hold that the 17th District Court of Tarrant County abused its discretion by not staying ENS's claims because they are subject to an arbitration proceeding between the parties previously ordered by the 44th District Court of Dallas County. We reverse the 17th District Court's order denying the motion, and we remand the case to that court to stay ENS's claims pending resolution of the previously ordered arbitration in the 44th District Court.

## I. Background

This litigation has traveled through several courts in Dallas and Tarrant counties. To set the proper perspective, we will detail ENS's factual allegations in the 17th District Court case, the last filed case, so that we may then look back in time to make appropriate comparisons.

In its original petition in the 17th District Court, ENS succinctly, and importantly, summarized its claim against Comware: "Plaintiff ENS files this original petition against defendant Comware for the return of $250,774.79 that ENS paid Comware for undelivered or returned equipment." ENS then detailed the factual dealings giving rise to its allegations, as follows:

## A.    ENS's Factual Allegations

ENS is an independent, secondary-market reseller of information technology. Among other things, it buys Cisco IT products and then sells them. From mid-2017 to April 25, 2018, ENS had been purchasing products, at a premium, from "Cisco Gold Partner" General Datatech (GDT). Buying Cisco products through Cisco-authorized sellers like GDT automatically imbued the products with Cisco's licenses and warranties—but only if the reseller was an authorized service provider.[1] In April 2018, GDT told ENS that Cisco would not allow GDT to sell products to ENS because, in Cisco's view, ENS was not an authorized service provider.

ENS alleged that to keep the business, GDT proposed a rerouting scheme: GDT assured ENS that GDT would continue selling it Cisco products through another authorized service provider and maintain the licenses and warranties. GDT asked ENS's CEO to come to Dallas to meet Comware's CEO at GDT's headquarters on May 21, 2018. Comware, which GDT said Cisco recognized as an authorized service provider, would become the intermediary GDT wanted (in order to keep ENS purchasing from GDT). Because Comware was an authorized Cisco service provider, Cisco's licenses and warranties would pass through to ENS's customers.

---

[1]A separate market exists to purchase Cisco products at cheaper prices, but those products lack certain licenses and Cisco's warranties.

ENS then began purchasing Cisco products in the new way that GDT allegedly requested. Under the new transactional structure, Comware handled invoicing for an apparent 1% commission. But despite the new transactional structure, GDT still shipped the purchased products to ENS directly—not through Comware. In the next five months, ENS purchased Cisco products from GDT through Comware some 209 times, totaling $3,401,835.50 in purchases.

In October 2018, GDT allegedly told ENS that Cisco had again learned about GDT's sales to ENS and that Cisco directed GDT to stop selling to ENS. Thereafter, according to ENS, GDT nevertheless went forward with shipping approximately $700,000 worth of Cisco hardware to ENS in seven different shipments. In light of the fact that the Cisco licenses and warranties would apparently not be honored by Cisco as previously represented, ENS claims it returned $905,285 worth of shipped products to GDT. This return left $250,774.79 outstanding, which ENS claims Comware owed to ENS as a refund.

### B. Prior Litigation

Now, returning in time to the first court to entertain this dispute, we travel east to the 160th District Court in Dallas County. ENS filed a verified petition to take depositions before suit (commonly referred to as a Rule 202 petition) in cause number DC-19-04815 on April 3, 2019. *See* Tex. R. Civ. P. 202.1. The adverse parties identified in the suit were Comware and GDT. The factual allegations made to support the Rule 202 petition were virtually identical to the allegations eventually filed

4

in the 17th District Court, even down to the claim that Comware had not returned "approximately $250,000 that [ENS] had provided for a portion of this purchase."

We next briefly visit the 101st District Court in Dallas, where GDT filed its original petition for application to compel arbitration. GDT asked the court to refer to arbitration ENS's claims anticipated in its Rule 202 petition in the 160th District Court. GDT also asked the 101st District Court to transfer the case to the 160th District Court where the Rule 202 suit was pending. Comware filed a plea in intervention in the 101st District Court, seeking to compel ENS to arbitrate the anticipated Rule 202 claims as well. ENS answered by denying that it had refused to arbitrate any claims subject to arbitration, stating that it had refused only to withdraw its Rule 202 petition. It contended that arbitration should be denied because it could not be ordered to arbitrate unless it had refused. ENS further stated it did not oppose transfer of the case to the 160th District Court, host of the Rule 202 suit. This concludes our side visit to the 101st District Court.

Back in the 160th District Court, Comware joined in GDT's motion to compel arbitration. Thus, as of July 18, 2019, ENS's Rule 202 petition and GDT's and Comware's petitions to compel arbitration were all pending in the 160th District Court.

On the road again, for reasons not explained, ENS decided to check out Tarrant County. It filed its original petition in August 2019 in the 342nd District Court. The sole defendant was Comware. The allegations derived from the allegations

in the Rule 202 petition filed in the 160th District Court in Dallas and mirrored the allegations soon to be raised in the 17th District Court case on appeal before us. The case in the 342nd District Court was nonsuited without service on Comware.

Back to the east, ENS filed suit against GDT in the 44th District Court on September 9, 2019 at 9:19 a.m. The factual allegations in ENS's petition were virtually the same as in its Rule 202 petition, with ENS seeking recovery of damages from GDT for fraud and promissory estoppel, as was similarly the case in the Rule 202 petition where ENS requested discovery to investigate these potential claims.[2] GDT joined Comware as a third party defendant, ENS moved to strike, and the court refused to strike the joinder. GDT and Comware also reasserted their requests to compel arbitration of ENS's claims in the 44th District Court case. On April 24, 2020, the 44th District Court signed an order referring the parties to arbitration. Among the matters considered by the court as recited in its order were GDT's and Comware's motions to compel arbitration and ENS's responses. The decretal language of the order recites:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all claims, counterclaims and Third-Party claims asserted in this matter are referred to arbitration before the American Arbitration Association in Dallas, Texas.

[2]But what happened to the suit in the 160th District Court? Apparently, because ENS chose to divide and conquer with separate lawsuits in Dallas and Tarrant Counties against GDT and Comware, the 160th District Court case was nonsuited.

6

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all claims, counterclaims and Third-Party claims asserted in this matter are hereby stayed pending arbitration.

One last trip back to the west reveals that ENS filed yet another suit against Comware, this time in the 17th District Court on September 9, 2019, at 9:22 a.m.— just three minutes after the 44th District Court case was filed. ENS did not name GDT as a defendant but sued "Comware for the return of $250,774.79 that ENS paid Comware for undelivered or returned equipment." Comware moved to compel arbitration, and on May 27, 2020, the 17th District Court signed an order denying the motion. Comware appeals from that denial.

The saga has now moved to this court for review. In two issues, Comware challenges the trial court's denial of its motion to compel arbitration or stay the proceedings. Within its second issue, Comware challenges the trial court's denial of its motion to dismiss or stay ENS's claims. Because our ruling on this subissue is dispositive, we need not address the first issue or the remainder of the second issue. *See* Tex. R. App. 47.1.

## II.    Standard of Review

Within its second issue, Comware contends that the 17th District Court should have dismissed or stayed ENS's claims under the doctrine of comity and for the orderly administration of justice because those claims are involved in arbitration ordered by the 44th District Court involving the same parties and transactions. The

7

principle of comity has been recognized in Texas common law as the rule of dominant jurisdiction:

> "The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." As a result, when two suits are inherently interrelated, "a plea in abatement in the second action must be granted." This first[]filed rule flows from "principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues." The default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed.

*In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding) (footnotes omitted) (quoting *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988), *disagreed with on other grounds by J.B. Hunt Transp.*, 492 S.W.3d at 292–93, and *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) (orig. proceeding)).

In conducting a dominant-jurisdiction analysis, we apply the deferential abuse-of-discretion standard. *Id.* at 293–94; *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 300 (Tex. 1988) (orig. proceeding). An abuse of discretion occurs when a trial court acts unreasonably, arbitrarily, or without regard to guiding legal principles. *J.B. Hunt Transp.*, 492 S.W.3d at 293–94; *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Regarding disputed issues of fact, the appellate court may not substitute its judgment for that of the trial court. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *see J.B. Hunt Transp.*, 492 S.W.3d at 294. However, regarding questions of law, "'(a) trial court has no 'discretion' in determining what the law is or applying the law to the facts.'" *J.B. Hunt Transp.*, 492 S.W.3d at 294 (quoting *Walker v.*

8

*Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). "This principle applies 'even when the law is unsettled.'" *Id.* (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)).

## III.   Analysis

### A.   Law of Dominant Jurisdiction

The first question to address in the dominant-jurisdiction analysis is whether there is an inherent interrelationship between the two cases—in this appeal, the 17th District Court case and the 44th District Court case. *See J.B. Hunt Transp.*, 492 S.W.3d at 292; *In re Happy State Bank*, No. 02-17-00453-CV, 2018 WL 1918217, at *4 (Tex. App.—Fort Worth Apr. 23, 2018, orig. proceeding) (mem. op.). If yes, then we assess the issue of dominant jurisdiction. *J.B. Hunt Transp.*, 492 S.W.3d at 292; *see Happy State Bank*, 2018 WL 1918217, at *7. If not, then both suits may proceed. *J.B. Hunt Transp.*, 492 S.W.3d at 292. *See generally Happy State Bank*, 2018 WL 1918217, at *4. As summarized by this court in *Happy State Bank*,

> "In instances where inherently interrelated suits are pending in two counties, and venue is proper in either county, the court in which suit was first filed acquires dominant jurisdiction." [*In re*] *Red Dot*[ *Bldg. Sys., Inc.*], 504 S.W.3d [320,] 322[ (Tex. 2016) (orig. proceeding)]. Thus, when two suits are inherently interrelated, the trial court is required to abate the second[]filed suit. *Id.*; *J.B. Hunt* [*Transp.*], 492 S.W.3d at 294. To determine if claims are inherently interrelated, triggering dominant jurisdiction, we are guided by the compulsory-counterclaim rule. *See J.B. Hunt* [*Transp.*], 492 S.W.3d at 292–93; *see also* Tex. R. Civ. P. 97(a). A counterclaim is compulsory if the claim: (1) is within the jurisdiction of the court, (2) was not the subject of a pending action when the original suit was commenced, (3) is mature and owned by the defending party at the time the pleading is filed, ([4]) arose out of the same transaction or

9

occurrence that is the subject matter of the opposing party's claim, ([5]) is against an opposing party in the same capacity, and ([6]) does not require the presence of third parties over whom the court cannot acquire jurisdiction. *See* Tex. R. Civ. P. 97(a); *J.B. Hunt* [*Transp.*], 492 S.W.3d at 292–93.

Thus, claims are interrelated and subject to a plea in abatement if the first[]filed claims are not the subject of a pending action at the time the pleading raising those claims is filed and if the claims meet the other dictates of rule 97(a). Tex. R. Civ. P. 97(a).

2018 WL 1918217 at *4.

It is not necessary to have identical parties and claims to conclude that the rule of dominant jurisdiction applies. *Id.* at *5; *see In re Volkswagen Clean Diesel Litig.*, 557 S.W.3d 73, 77 (Tex. App.—Austin 2017, orig. proceeding). It is sufficient if the claims in the first filed suit may be amended to bring in all necessary and proper parties and issues. *See Wyatt*, 760 S.W.2d at 247; *Volkswagen*, 557 S.W.3d at 77.

For example, the rule of dominant jurisdiction applies where the first filed case is ordered to arbitration on the defendant's request, a second case is filed in a different court by the same plaintiff, and the trial court in the second case enjoins the parties from proceeding with arbitration. *Joe Williamson Const. Co. v. Raymondville ISD*, 251 S.W.3d 800, 806–07 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). In an interlocutory appeal from the temporary injunction issued in the second filed case, our sister court of appeals held that, because the claims in the two cases were inherently interrelated, the court in the second filed case abused its discretion because it had no

authority to issue the injunction against the arbitration ordered by the first court, which was the court of dominant jurisdiction. *Id.*

Finally, when a case has been voluntarily and timely nonsuited, the effect is to render the case as if it had never been filed. *Xerox Com. Sols., L.L.C. v. Segura*, 579 S.W.3d 170, 174–75 (Tex. App.—El Paso 2019, no pet.); *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.). A nonsuit will not dispose of any claims for affirmative relief pending at the time of the nonsuit. *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). However, a request for arbitration, in and of itself, is not a claim for affirmative relief. *In re Riggs*, 315 S.W.3d 613, 615 n.2 (Tex. App.—Fort Worth 2010, orig. proceeding) (disagreeing on this point with *Quanto Int'l Co. v. Lloyd*, 897 S.W.2d 482, 487 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding), and *Raymondville ISD*, 251 S.W.3d at 805–06).

## B.    Application of Law

The application of the comity doctrine lies in the rule of dominant jurisdiction. The original petition in the 44th District Court was filed on September 9, 2019, at 9:19 a.m. The original petition in the 17th District Court was filed on September 9, 2019, at 9:22 a.m. Thus, contrary to ENS's contention that the suits were filed contemporaneously, the 44th District Court case was the first filed case, and that

court acquired dominant jurisdiction as between the two courts if the claims are "inherently interrelated." *J.B. Hunt Transp.*, 492 S.W.3d at 294.[3]

We hold that the claims are inherently interrelated; the six mandatory counterclaim elements under Rule 97(a) are met. *See* Tex. R. Civ. P. 97(a). ENS's claims against Comware would have been within the jurisdiction of the 44th District Court as ENS had already invoked the jurisdiction of that court in its suit against GDT, ENS's claims against Comware were within the jurisdictional limits and subject matter jurisdiction of a district court, Comware was made a third party defendant in the 44th District Court by GDT, and Comware's request to arbitrate ENS's claims was asserted and decided. *See Wyatt*, 760 S.W.2d at 247 ("It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues."); *see also Happy State Bank*, 2018 WL 1918217, at *5. The first two requirements of Rule 97(a) are thus satisfied.

---

[3]The case pending in the 160th District Court was still pending when the 44th District Court case was filed. However, after the filing of the cases in the 44th and 17th District Courts, the claims in the 160th District Court were nonsuited. This nonsuit rendered the 160th court case as if it had never been filed. Thus, the claims in the 44th District Court meet the *Happy State Bank* requirement for interrelationship of claims; i.e., the claims in the 44th District Court, the first filed case, were not subject to pending litigation when originally filed. *See In re Equinor Tex. Onshore Props.*, No. 05-20-00578-CV, 2020 WL 5939034, at *4 (Tex. App.—Dallas Oct. 7, 2020, orig. proceeding [mand. pending]) (mem. op.) ("First[]filed status does not relate back to a court in which neither jurisdiction nor venue is currently relevant.").

There is no question that ENS's claims against Comware were mature and owned by ENS when the 44th District Court case was filed. They had been asserted in multiple forums prior to their filing in the 17th District Court—which was three minutes after the 44th District Court case was filed. This satisfies the third Rule 97(a) element.

As to the fourth element, there is also no question that ENS's claims against Comware in the 17th District Court arose out of the same transaction or occurrence as ENS's claims against GDT in the 44th District Court. As noted by this court in *Happy State Bank*, "A claim arises out of the same transaction or occurrence if the same facts, whether disputed or not, are significant and logically relevant to both claims." *Id.* at *6; *see also Jack H. Brown & Co. v. Nw. Sign Co.*, 718 S.W.2d 397, 400 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). It is clear from the allegations described above that the facts supporting ENS's claims against both GDT and Comware are "significant and logically relevant to both claims."

The final two elements of Rule 97(a) are also satisfied; there are no apparent issues regarding the capacity or the presence of third parties that would materially affect the analysis here.

Since the court with dominant jurisdiction, the 44th District Court, had already ordered the claims between ENS and Comware to arbitration, the 17th District Court had no authority to deny Comware's motion to stay the proceedings in the 17th District Court. *See Raymondville ISD*, 251 S.W.3d at 806. Therefore, the 17th District

Court abused its discretion by denying the motion. We sustain this portion of Comware's second issue. As this ruling is dispositive of the appeal, we need not address Comware's first issue nor the remainder of its second issue. *See* Tex. R. App. 47.1.

## IV.    Conclusion

Having held that the 17th District Court abused its discretion by denying Comware's motion to stay ENS's claims pending resolution of the arbitration ordered by the 44th District Court, we reverse the order of the 17th District Court denying Comware's motion and remand the case to that court to enter an order staying ENS's claims against Comware (including discovery), pending resolution of the arbitration ordered by the 44th District Court. This court's order of November 6, 2020 staying that portion of the trial court's order dated September 18, 2020 denying Comware's "Motion to Stay and for a Protective Order" remains in effect until the trial court issues the stay order pursuant hereto.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: March 25, 2021

14